DOC NO 2
REC'D/FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

2007 JAN 31  PM 3: 44

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

JAI AND AMY PAGUIRIGAN, on
behalf of themselves and all others
similarly situated in the State of
Wisconsin,

              Plaintiffs,

vs.

AU OPTRONICS CORP.; AU
OPTRONICS CORP. AMERICA; CHI
MEI OPTOELECTRONICS CO., LTD.;
CHI MEI OPTOELECTRONICS USA,
INC.; CHUNGHWA PICTURE
TUBES, LTD.; FUJITSU LIMITED,
INC.; FUJITSU AMERICA, INC.;
HANNSTAR DISPLAY
CORPORATION; HITACHI, LTD.;
HITACHI DISPLAYS, LTD.;
HITACHI AMERICA, LTD.; IDTECH
CO., LTD; IDTECH USA, INC.; IPSA
ALPHA TECHNOLOGY, LTD.;
LG.PHILIPS LCD CO., LTD.;
LG.PHILIPS LCD AMERICA, INC.;
MATSUSHITA ELECTRIC
INDUSTRIAL CO. LTD.;
PANASONIC CORPORATION OF
NORTH AMERICA; MITSUBISHI
ELECTRIC CORPORATION;
MITSUBISHI ELECTRIC &
ELECTRONICS USA, INC.; NEC
ELECTRONICS CORPORATION;
NEC ELECTRONICS AMERICA,
INC.; NEC LCD TECHNOLOGIES,
LTD.; SAMSUNG ELECTRONICS
COMPANY LTD.; SAMSUNG
ELECTRONICS AMERICA; SANYO
ELECTRIC CO., LTD.; SANYO
NORTH AMERICA CORPORATION;
EPSON IMAGING DEVICES
CORPORATION; SEIKO EPSON
CORPORATION; EPSON AMERICA,
INC.; EPSON ELECTRONICS
AMERICA, INC.; SHARP

CIVIL ACTION NO. _____

# 07 C 0056 C

1

CORPORATION; SHARP
ELECTRONICS CORPORATION;
SONY CORPORATION; SONY
CORPORATION OF AMERICA;
SONY ELECTRONICS, INC.; S-LCD
CORPORATION; SYNTAX-
BRILLIAN CORP.; S-LCD
CORPORATION; TOSHIBA
CORPORATION; TOSHIBA
AMERICA INC.; TOSHIBA
MATSUSHITA DISPLAY
TECHNOLOGY CO., LTD.; and JOHN
DOES 1-100
          Defendants.

## CLASS ACTION COMPLAINT

Jai and Amy Paguirigan ("Plaintiffs"), on behalf of themselves and all other similarly

situated persons and entities in Wisconsin, hereby bring this action on behalf of a class of

"indirect purchasers" (the "Class") who purchased Thin-Film Transistor Liquid Crystal Displays

("LCD") and products containing LCD during the period beginning no later than January 1,

2002, and continuing until at least December 31, 2005 ("the Class Period") for damages and

declaratory relief against the above-named Defendants pursuant to the Wisconsin antitrust law

W.S.A. §§ 133.01 *et. seq.*, the Wisconsin Fraudulent Representation statute, Wis. Stat. § 100.18,

the common law of Wisconsin, and Section 16 of the Clayton Act, 15 U.S.C. § 26. Plaintiffs,

upon personal knowledge as to their own acts and status, and upon information and belief as to

all other matters, allege the following:

## INTRODUCTION

1.     This case arises out of a long-running conspiracy beginning at least January 1,

2002 and continuing until at least December 31, 2005 in which Defendants conspired to and did

fix prices, allocate market share, and commit other unlawful practices designed to inflate the

prices of LCD and products containing LCD sold indirectly to Plaintiffs and other purchasers in

2

the State of Wisconsin. The Defendants' international cartel affected a substantial amount of

commerce for products commonly found in households and businesses in Wisconsin.

Defendants' conspiracy has included communications and meetings in which Defendants agreed

to eliminate competition and fix the prices and allocate markets for LCD.

2.      The acts by Defendants in furtherance of the conspiracy have included, upon

information and belief, the following wrongful conduct and horizontal agreements:

(a)     participating in meetings and conversations in which Defendants
        and their co-conspirators discussed and agreed to prices for LCD;

(b)     participating in meetings and conversations in which Defendants
        and their co-conspirators allocated markets and customers for
        LCD;

(c)     participating in meetings and conversations in which Defendants
        and their co-conspirators discussed and agreed to refrain from
        engaging in competitive bidding or to submit complementary and
        non-competitive bids for particular contracts to supply LCD and
        products containing LCD to various consumers;

(d)     exchanged sales and customer information for the purposes of
        monitoring and enforcing adherence to the agreements reached;

(e)     issuing price announcements, price quotations, and general price
        increases in accordance with the pricing and market allocation
        agreements reached; and

(f)     facilitating, effectuating, implementing, monitoring, and
        concealing the contract, combination, and conspiracy to raise the
        prices of LCD sold.

## JURISDICTION & VENUE

3.      Plaintiffs bring this Class Action pursuant to the antitrust and common laws of

Wisconsin, including, but not limited to Wisconsin antitrust law W.S.A. §§ 133.01 *et seq.*

4.      This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26,

to enjoin Defendants, and their officers, agents, employees, or representatives from engaging in

the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $5,000,000 exclusive of interest and costs when the claims of individual class members are aggregated, and is between citizens of different states.

6.      The Defendants reside, transact business or are found within this District, and/or a substantial part of the events giving rise to Plaintiffs' claims arose in this District. Venue is proper in the United States District Court for the Western District of Wisconsin pursuant to 15 U.S.C. § 15 and § 22 and 28 U.S.C. § 1391.

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiffs' injunctive relief claims brought under the Clayton Act, 15 U.S.C. § 26. Jurisdiction is also proper under 28 U.S.C. § 1367 as all other claims arise from the same case or controversy as the Clayton Act claim.

8.      Personal jurisdiction comports with due process under the United States Constitution and Wisconsin's long-arm statutes.

9.      Without limiting the generality of the foregoing, Defendants (directly or through agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) have:

(a)     transacted business in Wisconsin;

(b)     contracted to supply or obtain services or goods in Wisconsin;

(c)     availed themselves intentionally of the benefits of doing business in Wisconsin;

(d)     produced, promoted, sold, marketed, and/or distributed their products or services in Wisconsin and, thereby, have purposefully profited from their access to Wisconsin's markets;

(e)     caused tortious damage by act or omission in Wisconsin;

(f)     caused tortious damage in Wisconsin by acts or omissions

4

committed outside such jurisdiction while (i) regularly doing or
soliciting business in such jurisdiction, and/or (ii) engaging in
other persistent courses of conduct within such jurisdiction, and/or
(iii) deriving substantial revenue from goods used or consumed or
services rendered in such jurisdiction;

(g)     committed acts and omissions which Defendants knew or should
have known would cause damage (and, in fact, did cause damage)
in Wisconsin to Plaintiffs and Class members while (i) regularly
doing or soliciting business in such jurisdiction, and/or (ii)
engaging in other persistent courses of conduct within such
jurisdiction, and/or (iii) deriving substantial revenue from goods
used or consumed or services rendered in such jurisdiction;

(h)     engaged in a conspiracy with others doing business in Wisconsin
that caused tortious damage in such jurisdiction; and

(i)     otherwise had the requisite minimum contacts with Wisconsin such
that, under the circumstances, it is fair and reasonable to require
Defendants to come to this Court to defend this action.

11.     Plaintiffs, Jai and Amy Paguirigan, are residents of Madison, Wisconsin.  In

addition, a substantial part of the trade and commerce, as well as the arrangement, contract,

agreement, trust, combination, conspiracy, unfair or deceptive practices, fraudulent

representations, and/or uniform and common course of conduct giving rise to Plaintiffs' claims,

occurred within Wisconsin, including, among other things, the indirect sale of LCD to Plaintiffs

and other members of the class at supra-competitive prices.

12.     As a result of the manufacture, distribution, delivery and sale of Defendants'

products to purchasers within Wisconsin, directly or through their subsidiaries, affiliates or

agents, Defendants obtained the benefits of the laws of Wisconsin and the markets of Wisconsin

for their products.

## PARTIES

### A.   Plaintiffs

13.     Plaintiffs, Jai and Amy Paguirigan, are residents of Madison, Dane County,

5

Wisconsin. During the time period covered in this Complaint, Plaintiffs indirectly purchased

LCD from one or more of the Defendants, their subsidiaries, divisions, units or affiliates. As a

result, Plaintiffs paid supra-competitive and artificially inflated prices for LCD and have been

injured by reason of the illegal conduct alleged herein.

**B.    Defendants**

14.    Defendant AU Optronics Corporation is a Taiwanese corporation with its

principal place of business at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078,

Taiwan, R.O.C. Defendant AU Optronics Corporation produced, promoted, sold, marketed,

and/or distributed LCD to customers in Wisconsin, during the Class Period. Among others, AU

Optronics sells its products in Wisconsin through its distributor, Nu Horizons Electronics.

15.    Defendant AU Optronics Corporation America is a wholly owned subsidiary of

Defendant Au Optronics Corporation and is incorporated in California with its principal place of

business at 9720 Cypresswood Drive, Suite 241, Houston, Texas 77070. Defendant AU

Optronics Corporation America produced, promoted, sold, marketed, and/or distributed LCD to

customers in Wisconsin during the Class Period. Defendants AU Optronics Corporation and AU

Optronics Corporation are referred to collectively as "AU Optronics."

16.    Defendant Chi Mei Optoelectronics Co., Ltd. is a Taiwanese corporation with its

principal place of business at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Park, Tainan, 74147

Taiwan, R.O.C. Defendant Chi Mei Optoelectronics Co., Ltd. produced, promoted, sold,

marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Among

other avenues, Che Mei Optoelectronics sells LCD to Wisconsin consumers and businesses

online through Screentek, Inc.

17.    Defendant Chi Mei Optoelectronics USA, Inc., is a wholly owned subsidiary of

6

Defendant Chi Mei Optoelectronics Co., Ltd. and is incorporated in Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. Defendant Chi Mei Optoelectronics USA, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants Chi Mei Optoelectronics USA, Inc. and Chi Mei Optoelectronics Co., Ltd. are referred to collectively as "Chi Mei Optoelectronics."

18.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese corporation with its principal place of business at 1127 Hopin Road, Padeh City, Taoyuan, Taiwan, R.O.C. Defendant Chunghwa produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Among other avenues, Chunghwa sells products to Wisconsin customers through its e-business system and through Screentek, Inc.

19.    Defendant Fujitsu Limited, Inc. is a Japan corporation with its principal place of business at Shiodome City Center 1-5-2 Higashi Shimbashi, Minato-ku, Tokyo, 105-7123 Japan. Defendant Fujitsu Limited, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Fujitsu Limited, Inc. sells its products to Wisconsin customers through its online store and through resellers such as ACP-WI Arlington Computer Products in Franklin, Wisconsin; Heartland Business Systems, in Little Chute and Milwaukee, Wisconsin; EnovtatIT in Madison, Wisconsin; and Paragon Development Systems in Oconomowoc, Wisconsin. Fujitsu Limited, Inc. also sells its products in retail stores DataVision, J&R, Fry's.com and Micro Center. Fujitsu Limited, Inc. distributes LCD to Wisconsin consumers and businesses through Arrow Electronics and Screentek, Inc.

20.    Defendant Fujitsu America, Inc., is a wholly owned subsidiary of Defendant Fujitsu Limited, Inc. and is incorporated in California with its principal place of business at 1250 Arques Ave., M/S 124 Sunnyvale, California 94085. Defendant Fujitsu America, Inc. produced,

promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants Fujitsu America, Inc. and Fujitsu Limited, Inc. are referred to collectively as "Fujitsu."

21.     Defendant Hannstar Display ("Hannstar") is a Taiwanese corporation with its principal place of business at 12Fl., No. 480, Rueiguang Road, Neihu Chiu, Taipei 114, Taiwan, R.O.C. Defendant Hannstar produced, promoted, sold, marketed, and/or distributed LCD to Wisconsin customers during the Class Period through, for example, Screentek, Inc.

22.     Defendant Hitachi, Ltd. is a Japanese corporation with its principal place of business at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280 Japan. Hitachi, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Hitachi, Ltd. markets and sells LCD to Wisconsin customers through companies such as American TV & Appliance and Screentek, Inc.

23.     Defendant Hitachi Displays, Ltd. is a wholly owned subsidiary of Defendant Hitachi, Ltd. with its principal place of business at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3,Chiyoda-ku, Tokyo 101-0022 Japan. Defendant Hitachi Displays, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period.

24.     Defendant Hitachi America, Ltd. is a wholly owned subsidiary of Defendant Hitachi, Ltd. and is incorporated in New York with its principal place of business at 2000 Sierra Point Parkway, Brisbane, California 94005. Defendant Hitachi America, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to consumers in Wisconsin during the Class Period. Defendants Hitachi America, Ltd., Hitachi Displays, Ltd. and Hitachi, Ltd. are referred to collectively as "Hitachi."

25.     Defendant International Display Technology is a wholly owned Japanese

8

subsidiary of Defendant Chi Mei Optoelectronics with its principal place of business at Nansei

Yaesu Bldg., 3F, 2-2-10, Yaesu, Chuo-ku, Tokyo 104-0028 Japan. Defendant International

Display Technology produced, promoted, sold, marketed, and/or distributed LCD to consumers

in Wisconsin during the Class Period through Screentek, Inc and other similar companies.

26.    Defendant International Display Technology USA, Inc. is a wholly owned

subsidiary of Defendant International Display Technology and is incorporated in California with

its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110.

Defendant International Display Technology USA, Inc. produced, promoted, sold, marketed,

and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants

International Display Technology USA, Inc. and International Display Technology are referred

to collectively as "IDTech."

27.    Defendant IPSA Alpha Technology, Ltd. ("IPSA Alpha") is a wholly owned

subsidiary of Defendant Hitachi, Ltd., with its principal place of business at 3732, Hayano,

Mobara-shi, Chiba 297-0037 Japan. It was created as a joint venture of Defendants Hitachi, Ltd.,

Toshiba Corporation and Matsushita Electric Industrial Co. Defendant IPSA Alpha produced,

promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class

Period through the joint venturers.

28.    Defendant LG.Philips LCD Co., Ltd. is incorporated in South Korea with its

principal place of business at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721 South Korea.

Defendant LG.Philips LCD Co., Ltd. produced, promoted, sold, marketed, and/or distributed

LCD to consumers in Wisconsin during the Class Period in retail stores such as American TV &

Appliance, Sams Club, Target, WalMart, Best Buy and CompUSA. LG.Philips LCD Co., Ltd.

also distributes its LCD to Wisconsin customers through Troxell Communications.

29.     Defendant LG.Philips LCD America, Inc. is a wholly owned subsidiary of

Defendant LG.Philips LCD Co., Ltd. and is incorporated in California with its principal place of

business at 150 East Brokaw Road, San Jose, California 95112. Defendant LG.Philips LCD

America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in

Wisconsin during the Class Period. Defendants LG.Philips LCD America, Inc. and LG.Philips

LCD Co., Ltd. are collectively referred to as "LG.Philips."

30.     Defendant Matsushita Electric Industrial Co., Ltd.(d/b/a as "Panasonic") is a

Japanese corporation with its principal place of business at 1006, Kadoma, Kadoma City, Osaka

571-8501 Japan. Defendant Matsushita Electric Industrial Co., Ltd. produced, promoted, sold,

marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through

companies such as Screentek, Inc.

31.     Defendant Panasonic Corporation of America is a wholly owned subsidiary of

Defendant Matsushita Electric Industrial Co., Ltd. and is incorporated in Delaware with its

principal place of business at 1 Panasonic Way, Secaucus, New Jersey 07094. Defendant

Panasonic Corporation of America produced, promoted, sold, marketed, and/or distributed LCD

to customers in Wisconsin during the Class Period. Defendants Panasonic Corporation of

America and Matsushita Electric Industrial Co., Ltd. are collectively referred to as "Matsushita."

Matsushita's LCD is sold in retail stores in Wisconsin such as Circuit City, Best Buy, and

WalMart. Matsushita also sells LCD to Wisconsin customers through Screentek, Inc.

32.     Defendant Mitsubishi Electric Corporation is a Japanese corporation with its

principal place of business at Tokyo Building 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310

Japan. Defendant Mitsubishi Electric Corporation produced, promoted, sold, marketed, and/or

distributed LCD to customers in Wisconsin during the Class Period through Circuit City, Troxell

10

Communications, and Screentek, Inc.

33.     Defendant Mitsubishi Electric & Electronics USA, Inc. is a wholly owned
subsidiary of Defendant Mitsubishi Electric Corporation. Mitsubishi Electric & Electronics
USA, Inc. is incorporated in Delaware with its principal place of business at 5665 Plaza Drive
Cypress, California 90630. Defendant Mitsubishi Electric & Electronics USA, Inc. produced,
promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class
Period. Defendants Mitsubishi Electric & Electronics USA, Inc. and Mitsubishi Electric
Corporation are referred to collectively as "Mitsubishi."

34.     Defendant NEC Electronics Corporation is incorporated in Japan with its
principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8668
Japan. Defendant NEC Electronics Corporation produced, promoted, sold, marketed, and/or
distributed LCD to customers in Wisconsin during the Class Period through companies such as
CompUSA, Arrow Electronics and Troxell Communications.

35.     Defendant NEC Electronics America, Inc. is a wholly owned subsidiary of
Defendant NEC Electronics Corporation and is incorporated in California with its principal place
of business at 2880 Scott Boulevard, Santa Clara, California 95050. Defendant NEC Electronics
America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in
Wisconsin during the Class Period.

36.     Defendant NEC LCD Technologies, Ltd. is a Japanese corporation with its
principal place of business at 1753 Shimonumabe, Nakahara-ku, Kawasaki, Kanagawa 211-8666
Japan. Defendant NEC LCD Technologies, Ltd. produced, promoted, sold, marketed, and/or
distributed LCD to customers in Wisconsin during the Class Period. Defendants NEC LCD
Technologies, Ltd., NEC Electronics America, Inc. and NEC Electronics Corporation are

11

referred to collectively as "NEC."

37.     Defendant Samsung Electronics Company, Ltd. is a South Korean corporation with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, South Korea. Defendant Samsung Electronics Company, Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through companies such as Best Buy, Circuit City, Target, CompUSA, American TV & Appliance, and Troxell Communications.

38.     Defendant Samsung Electronics America, Inc. is incorporated in New York with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. Defendant Samsung Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants Samsung Electronics America, Inc. and Samsung Electronics Company, Ltd. are collectively referred to as "Samsung."

39.     Defendant Sanyo Electric Co. Ltd. is a Japanese corporation with its principal place of business at 5-5, Keihan-Hondori 2-chome, Moriguchi City, Osaka 570-8677 Japan. Defendant Sanyo Electric Co. Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through companies such as Arrow Electronics.

40.     Defendant Sanyo North America Corp. is incorporated in Delaware with its principal place of business at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo North America Corp. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants Sanyo North America Corp. and Sanyo Electric Co. Ltd. are collectively referred to as "Sanyo."

12

41.     Defendant Epson Imaging Devices Corporation is a Japanese corporation with its principal place of business at 6925 Toyoshina Tazawa, Azumino-shi, Nagano, Japan. Defendant Epson Imaging Devises Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period.

42.     Defendant Seiko Epson Corporation is a Japanese corporation with its principal place of business at 3-3-5 Owa, Suwa, Nagano 392-8502 Japan. Defendant Seiko Epson Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period.

43.     Defendant Epson America, Inc. is a wholly owned subsidiary of Defendant Seiko Epson Corporation with its principal place of business at 3840 Kilroy Airport Way, Long Beach, California 90806. Defendant Epson America, Inc. manufactured, sold and distributed LCD to customers in Wisconsin during the Class Period.

44.     Defendant Epson Electronics America, Inc. is a wholly owned subsidiary of Defendant Seiko Epson Corporation with its principal place of business at 150 River Oaks Parkway, San Jose, California 95134. Defendant Epson Electronics America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to consumers in Wisconsin during the Class Period. Defendants Epson Electronics America, Inc., Epson America, Inc., Epson Imaging Devices Corporation, and Seiko Epson Corporation are collectively referred to as "Seiko." Seiko sells its LCD to Wisconsin customers through companies such as Arrow Electronics.

45.     Defendant Sharp Corporation is a Japanese corporation with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522 Japan. Defendant Sharp Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through companies such as Best Buy, Circuit City, Screentek, Inc., Troxell

13

Communications and Arrow Electronics.

46.     Defendant Sharp Electronics Corporation is a wholly owned subsidiary of
Defendant Sharp Corporation and is incorporated in New York with its principal place of
business at Sharp Plaza, Mahwah, New Jersey 07430. Defendant Sharp Electronics Corporation
produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during
the Class Period. Defendants Sharp Electronics Corporation and Sharp Corporation are referred
to collectively as "Sharp."

47.     Defendant SONY Corporation is a Japanese corporation with its principal place of
business at 6-7-35 Kitashinagawa, Shinagawa-ku, Tokyo 141-0001 Japan. Defendant SONY
Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers in ·
Wisconsin during the Class Period through companies such as Target, Best Buy, CompUSA,
Circuit City, Sams Club, Screentek, Inc, and Troxell Communications.

48.     Defendant SONY Corporation of America is incorporated in New York and is a
wholly owned subsidiary of Defendant SONY Corporation with its principal place of business at
550 Madison Avenue, 27th Floor, New York, New York 10022. Defendant SONY Corporation
of America produced, promoted, sold, marketed, and/or distributed LCD to customers in
Wisconsin during the Class Period.

49.     Defendant SONY Electronics, Inc. is a wholly owned subsidiary of Defendant
SONY Corporation with its principal place of business at 12450 W. Bernardo St., San Diego,
California 92127. Defendant SONY Electronics, Inc. produced, promoted, sold, marketed,
and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants SONY
Electronics, Inc., SONY Corporation of America and SONY Corporation are referred to
collectively as "SONY."

14

50.     Defendant S-LCD Corporation ("S-LCD") is incorporated in South Korea with its principal place of business at Tangjung, Asan-City, ChungCheongMan-Do, South Korea. It is a joint venture between Defendant Samsung (50% plus one share) and Defendant SONY (50% minus one share). Defendant S-LCD produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through the joint venturers.

51.     Defendant Syntax-Brillian Corp. ("Syntax Brillian") is incorporated in Delaware with its principal place of business at N. Desert Drive, Tempe, Arizona 85281. Defendant Syntax-Brillian produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through companies such as American TV & Appliance and Troxell Communications.

52.     Defendant Toshiba Corporation is incorporated in Japan with its principal place of business at 1-1 Shibaura, 1-chome, Minato-ku, Tokyo 105-8001 Japan. Defendant Toshiba Corporation produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through companies such as Target, American TV & Appliance, Best Buy, CompUSA, Arrow Electronics and Screentek, Inc.

53.     Defendant Toshiba America, Inc. is a wholly owned subsidiary of Defendant Toshiba Corporation with its principal place of business at 1251 Avenue of the Americas, Suite 4110 New York, New York 10020. Defendant Toshiba America, Inc. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period. Defendants Toshiba America, Inc. and Toshiba Corporation are referred to collectively as "Toshiba."

54.     Defendant Toshiba Matsushita Display Technology Co., Ltd. is a Japanese joint venture between Defendants Toshiba and Matsushita with its principal place of business at

Rivage Shinagawa, 4-1-8 Konan, Minato-ku, Tokyo 108-0005 Japan. Defendant Toshiba Matsushita Display Technology Co., Ltd. produced, promoted, sold, marketed, and/or distributed LCD to customers in Wisconsin during the Class Period through Screentek, Inc, among others.

55. Whenever reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the corporation's management, direction, control, or business affairs. Moreover, Defendants acted as each other's agents or joint venturers with respect to their conspiracy, and any Defendant that is a subsidiary of a foreign parent acted as its parent company's agent for its parent's United States LCD sales.

56. The acts charged in this Complaint have been done by the aforesaid Defendants and were ordered and performed by the aforesaid Defendants' officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of said Defendants' business or affairs.

### ADDITIONAL DEFENDANTS

57. As additional information may come to light, Plaintiffs reserve the right to add other Defendants as they become known to them.

58. The acts alleged in this Complaint were, upon information and belief, authorized, ordered or done by officers, agents, employees, or representatives of each Defendant while actively engaged in the management of its business or affairs.

### CO-CONSPIRATORS

59. Various other individuals, partnerships, corporations, organizations, firms, and associations not yet made Defendants in this Complaint (the "Co-Conspirators") and presently

16

unknown to Plaintiffs, participated as co-conspirators in the violation alleged herein, and

performed acts and made statements in furtherance of the conspiracy.

60.     The true names and capacities, whether individual, corporate, associate,

representative, or otherwise of Defendants named herein as DOES 1 through 100 are unknown to

Plaintiffs at this time, and are therefore sued by such fictitious names. Plaintiffs will amend this

complaint to allege the true names and capacities of DOES 1 through 100 when they become

known to Plaintiffs. Each of DOES 1 through 100 is in some manner legally responsible for the

violations of law alleged herein.

61.     The acts charged in this Complaint as having been done by Defendants and the

DOE Defendants were authorized, ordered, or done by their officers, agents, employees, or

representatives, while actively engaged in the management of the Defendants' businesses or

affairs.

## CLASS ACTION ALLEGATIONS

62.     This action is brought by Plaintiffs on behalf of themselves, and pursuant to Rule

23 of the Federal Rules of Civil Procedure, as representative of a class ("the Class"). In

particular, Plaintiffs assert that a class action is appropriate under Rule 23(b)(3).

63.     The Class is defined as:

> All persons residing in Wisconsin who indirectly purchased LCD
> or products containing LCD manufactured and sold by one or more
> of the Defendants during the Class Period. The class of indirect
> purchasers of these products includes consumers and businesses
> who have purchased LCD and/or products containing LCD.
> Excluded from the Class are: all federal, state, or local
> governmental entities; Defendants' subsidiaries and affiliates; all
> persons who purchased LCD directly from any Defendant or from
> any other manufacturer of LCD.

64.     Although the exact size of the Class is unknown, the total number of Class

17

members is in the thousands as most consumers have purchased LCD and/or products containing

LCD. Based upon the nature of the trade and commerce involved, joinder of all Class members

would be impracticable.

65.     Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly

and adequately protect the interests of the Class. Plaintiffs have no conflict with any other Class

member and have retained competent counsel experienced in class action and antitrust litigation.

66.     Common questions of law and fact exist, including:

- (a)    Whether Defendants conspired with each other and others
  to fix, raise, stabilize or maintain the prices of LCD;

- (b)    Whether Defendants' acts were unfair or deceptive;

- (c)    Whether the combination or conspiracy caused the prices of
  LCD and products containing LCD to be higher than they
  would have been in the absence of Defendants' conduct;

- (c)    The operative time period for the conspiracy;

- (d)    Whether Defendants' conduct caused injury to the business
  or property of Plaintiffs and the Class, and if so, the
  appropriate measure of damages;

- (e)    Whether Defendants' conduct violated Wisconsin's
  antitrust laws as provided for under W.S.A. §§ 133.01 *et
  seq.*;

- (f)    Whether Defendants' conduct violated Wisconsin's
  Fraudulent Representation Statute, W.S.A. § 100.18;

- (g)    Whether Defendants actively concealed the violation
  alleged herein; and

- (h)    The appropriate nature of the class-wide equitable relief.

These and other questions of law and fact are common to the Class members and predominate

over any questions affecting only individual Class members.

67.     Class action treatment is a superior method for the fair and efficient adjudication

of the controversy described herein. The class action vehicle provides an efficient method for enforcement of the rights of the Plaintiffs and the Class, and such litigation can be fairly managed. Plaintiffs know of no unusual problems of management or notice.

68.     It is desirable for the claims of Plaintiffs and Class members to be consolidated into a single proceeding to provide all claimants with a forum in which to seek redress for the violations of the laws of Wisconsin and the United States.

69.     The difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure, including but not limited to, providing claimants with a suitable method for the redress of their claims.

## FACTUAL ALLEGATIONS

### A.     Background of the LCD Industry

70.     LCD is a thin, flat display device consisting of pixels aligned in front of a reflector or source of light. An LCD generally consists of a mask of colored pixels and a layer of liquid crystal solution sandwiched between two panes of polarized glass. When an electric current is passed through the liquid crystals, the crystals react, creating electric fields. By manipulating the state of liquid crystals using electrical charges, the liquid crystals act like tiny shutters, opening or closing in response to the stimulus, thereby allowing light to pass through the colored pixels. As a result, the LCD is illuminated, thus creating an image.

71.     LCD technology was introduced during the early 1970s; however, they were used commercially for laptop computer screens during the late 1980s. Today, LCD are used in a variety of electronic products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players.

72.     The LCD market is conducive to the kind of anticompetitive practices alleged in this Complaint. The market is oligopolistic, is characterized by high manufacturing costs, and has technological barriers to entry. The high barriers to entry are due to the capital-intensive nature of the display industry and the high volumes of production required to achieve economies of scale.

73.     According to reports, the worldwide market for LCD panels was worth $53 billion in 2004. Other estimates suggest that the market is worth approximately $70 billion. Most LCD panels are manufactured in Taiwan and South Korea. For the first quarter of this year, Taiwan accounted for 52.2% of the LCD panel shipments, while South Korea had a 37.4% share. Last year, South Korea led with a 48.8% share against Taiwan's 41.8% share.

74.     LG.Philips and Samsung have consistently been the industry's leading manufacturers. In 2005, LG.Philips captured a 21.4% market share of LCD panel production sized ten inches or larger, edging out Samsung, which had a 20.9% market share. Following closely behind were AU Optronics with 14.5%, Chi Mei Optoelectronics with 11.8%, and Chunghwa with 7.3%. Thus far in 2006, however, Samsung appears to have overtaken LG.Philips as the largest manufacturer of LCD panels—a result of the joint venture operation with SONY to form S-LCD Corp. Trailing close behind is AU Optronics. With its acquisition of Quanta Display in 2006, the company's estimated market share rises to approximately 20.2%, according to industry experts.

75.     Prior to the Class Period, LCD prices in the United States decreased significantly. New competitors entered the LCD market during this period. Moreover, the increased manufacturing capacity resulting from newly constructed advanced generation factories and efficiency in production equipment and processes contributed to these price declines. The LCD manufacturers' saw their profit margins squeezed from falling average selling prices. Prices had

dropped so precipitously that producers were actually selling at production cost, without making any profit.

76.     These efficiencies did, however, allow for the increased use of finished LCD in computer monitors and laptop notebooks, flat panel televisions and cell phones. Upon information and belief, the average selling price of LCD rose significantly from 2003 to 2004 largely because of collusion among the Defendants. During this period, Defendants agreed to reduce supply in order to artificially raise prices.

77.     Defendants' collusion operated to stymie the decline in prices prior to 2003, such that they raised prices to supra-competitive levels. By 2003, prices climbed. For instance, the average price of LCD larger than 10 inches increased from $219 in the second quarter to $271 in the fourth quarter. At the end of 2003, the market was valued at $33 billon, a significant increase from $29 billion in 2002. This increasing average price of LCD continued to rise in 2004, hitting an all-time high. According to industry analysts, the market was valued at $36 billion in 2004. It was the collusive activity among the Defendants and their Co-Conspirators that kept the prices at supra-competitive levels and lead to the increase in value of the overall LCD market.

78.     The LCD industry has undergone significant consolidation throughout the Class Period, leading to substantially fewer LCD manufacturers in the market. Examples of this consolidation include AU Optronics' acquisition of Quanta Display and the collaboration by industry leaders to create ventures such as S-LCD, Toshiba Matsushita Display Technology and Sanyo Epson Imaging Devices.

79.     The market for LCD products is large and steadily increasing in size. For example, shipments of LCD displays is predicted to rise to 154.3 million units in the first half of 2007, which is a 6.3% increase from the 145.2 million units shipped during the latter half of 2006, and is a 23.7%

21

increase from the first half of 2006.

**B.    Investigation of the LCD Industry**

80.    The United States Department of Justice ("DOJ") recently launched an investigation into anticompetitive practices by LCD manufacturers. On or about December 8, 2006, the DOJ subpoenaed Defendants LG.Philips, Samsung, Sharp and Chi Mei Optoelectronics. A spokesperson for the DOJ confirmed that an investigation is underway in the LCD industry and that the DOJ is cooperating internationally with other antitrust authorities. Several Defendants such as LG.Philips, Sharp and Samsung have acknowledged publicly that the DOJ has subpoenaed them about the LCD investigation.

81.    Authorities in the European Union, Japan, South Korea and Taiwan have launched similar probes in coordination with the DOJ investigation. On December 12, 2006, the European Commission confirmed that it had sent formal requests for information to a number of LCD producers. Japan's Fair Trade Commission also confirmed that it is investigating allegations of price-fixing against LG.Philips, Samsung, AU Optronics, Sharp, Seiko Epson, Toshiba Matsushita Display Technology, NEC, Hitachi, and IPS Alpha. LG.Philips publicly acknowledged on December 11, 2006, that it is being investigated in various countries: "[A]s part of an investigation of possible anticompetitive conduct in the LCD industry, officials from the Korean Fair Trade Commission visited the offices of LG.Philips LCD in Seoul, Korea." Defendants Samsung, Sharp and Chi Mei Optoelectronics have also confirmed that they are under investigation by competition regulators overseas.

82.    Price fixing among manufacturers in the high-technology industry has also occurred in other product markets, as evidenced by the most recent conspiracy in the Dynamic Random Access Memory market and the alleged conspiracy in the Static Random Access Memory market.

Not surprisingly, many of the Defendants in these other cases are also implicated in this new investigation of the LCD industry such as Defendants Samsung and Toshiba.

## TRADE AND COMMERCE

83.    The activities of Defendants and their Co-Conspirators, as described herein, were within the flow of, were intended to, and did have a substantial effect on the commerce of LCD in Wisconsin.

84.    During the Class Period, Defendants manufactured, sold and shipped substantial quantities of LCD to manufacturing businesses and consumers in Wisconsin. Those businesses resold and/or incorporated the LCD into other products including, but not limited to, flat-panel televisions and computer monitors, laptop computers, digital cameras, cell phones, microwaves, digital personal assistants and digital music players and then sold those goods to businesses and consumers in Wisconsin.

85.    The contract, combination, and conspiracy consists, upon information and belief, of a continuing agreement, understanding, and concert of action between and among Defendants and their Co-Conspirators, the substantial terms of which were and are to fix, stabilize, and maintain prices, allocate markets and customers, and to coordinate price increases for the sale of LCD in Wisconsin.

86.    The acts in furtherance of the conspiracy by Defendants have included, on information and belief, the following wrongful conduct and horizontal agreements:

> (a)    participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to fix, raise, stabilize, and maintain the prices for LCD;
>
> (b)    participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to allocate

23

markets and customers for LCD;

    (c)    participating in meetings and conversations on a periodic basis since at least January 1, 2002 in which Defendants and their Co-Conspirators discussed and agreed to refrain from engaging in competitive bidding, or to submit complementary and non-competitive bids, for particular contracts to supply LCD and/or products containing LCD to various customers;

    (d)    exchanging sales and customer information for the purposes of monitoring and enforcing adherence to the agreements reached;

    (e)    issuing price announcements, price quotations, and general price increases in accordance with the pricing and market allocation agreements reached; and

    (f)    facilitating, effectuating, implementing, monitoring and concealing the contract, combination, and conspiracy to raise the prices of LCD sold.

87.    For the purposes of formulating and effectuating the aforesaid contract, combination, and conspiracy, Defendants and their Co-Conspirators did those things which they conspired to do.

## IMPERMISSIBLE MARKET EFFECTS

88.    The contract, combination, and conspiracy alleged herein had the following effects, among others:

    (a)    prices paid by Plaintiffs and the Class members for LCD and products containing LCD were fixed, raised, maintained, and stabilized at artificially high and noncompetitive levels;

    (b)    indirect purchasers of LCD and products containing LCD were deprived of the benefits of free and open competition; and

    (c)    competition between and among Defendants and their Co-Conspirators in the sale of LCD and/or products containing LCD was unreasonably restrained.

89.    As a result, Plaintiffs and the Class members have been substantially injured in

24

their businesses and property in that they have not only been deprived the benefits of fair and open competition on the merits but have paid more for LCD and/or products containing LCD than they otherwise would have paid in the absence of Defendants' unlawful contract, combination, and conspiracy.

## FRAUDULENT CONCEALMENT

90.     Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

91.     Throughout the Class Period, Defendants and their Co-Conspirators engaged in a successful, illegal price-fixing conspiracy that was by its nature self-concealing and further effectively, affirmatively, and fraudulently Defendants' concealed their unlawful combination, conspiracy, and acts in furtherance thereof from Plaintiffs and the Class members.

92.     Although Plaintiffs exercised due diligence throughout the Class Period, they could not have discovered Defendants' unlawful scheme and conspiracy at an earlier date because of Defendants' effective, affirmative, and fraudulent concealment of their activities. Defendants' wrongful conduct was carried out in part through means and methods that were designed and intended to avoid detection, and which in fact, successfully precluded detection.

93.     Defendants' fraudulent concealment included public statements that falsely attributed wild price fluctuations of LCD to natural reasons such as seasonal ebb and flow and a highly competitive market. Defendants also instructed their United States entities to offer similar false reasons to explain price increases to customers in Wisconsin. In fact, those fluctuations were due to Defendants periodic withholding of the supply of LCD to create an artificial supply shortage, which in turn generated a level of artificial demand, driving up prices.

94.     Plaintiffs and the Class members had no reason to disbelieve Defendants'

explanations of the pricing behavior of these products. Indeed, in some instances Defendants'

explanations involved proprietary or otherwise non-public information within Defendants'

exclusive control, leaving Plaintiffs and the Class members without means to verify their

accuracy. Plaintiffs did not know, nor could they have known that Defendants' prices for LCD

were artificially inflated and maintained by virtue of Defendant's illegal price-fixing conspiracy

and that Plaintiffs and the other Class members were paying higher prices for LCD and/or

products containing LCD than they would have paid in a competitive market.

95.    Plaintiffs have exercised due diligence by promptly investigating the facts giving

rise to the claims asserted herein upon having reasonable suspicion of the existence of

Defendants' conspiracy, and by seeking discovery as to the matters asserted herein, to the extent

permitted by law.

## COUNT I
### (Violation Wisconsin Antitrust Statute §§ 133.01, *et seq.*)

96.    Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if

fully set forth herein.

97.    Beginning at least by January 1, 2002 and continuing until at least December 31,

2005, the exact date being unknown to Plaintiffs, Defendants and their Co-conspirators engaged

in a contract, combination, and conspiracy in an unreasonable restraint of trade and commerce in

violation of antitrust statues and substantially affecting trade or commerce in Wisconsin. The

foregoing conduct has been, and continues to be, conducted in violation of Wisconsin statute

W.S.A. § 133.03.

98.    Each of the Defendants named herein, directly or indirectly and through affiliates,

dominated, controlled, manufactured, sold and/or distributed in Wisconsin.

99.    During the Class Period, Defendants have engaged in illegal, anticompetitive

practices including those described herein and/or combinations of capital, skill, and acts with others with the intent, purpose and effect of creating and carrying out restrictions in trade and commerce; increasing the price and limiting and reducing the supply of LCD; and restraining trade and preventing competition in the relevant markets of LCD products, thereby enabling Defendants to perpetuate their monopoly.

100.    The aforesaid violations of W.S.A. §§ 133.01, *et seq* consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their Co-Conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for, LCD.

101.    For the purpose of forming and effectuating the unlawful trust, Defendants and their Co-Conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices and course of conduct set forth above and the following:

      a.    to fix, raise, maintain and stabilize the price of LCD;

      b.    to allocate markets for LCD amongst themselves; and

      c.    to allocate amongst themselves the production of LCD.

102.    The combination and conspiracy alleged herein has had, *inter alia*, the following effects:

      a.    price competition in the sale of LCD has been restrained, suppressed, and/or eliminated in the State of Wisconsin;

      b.    prices for LCD sold by Defendants and their Co-Conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the State of Wisconsin;

27

   c. those who indirectly purchased LCD have been deprived of the benefit of free and
    open competition.

 103. Plaintiffs and the Class members paid supra-competitive and artificially inflated
prices for LCD and products containing LCD.

 104. As a direct and proximate result of Defendants' unlawful and anticompetitive
practices, including combinations and contracts to restrain trade and monopolize the relevant
markets, Plaintiffs and the Class members have been injured in their business and property in
that they paid more for LCD than they otherwise would have paid in the absence of Defendants'
unlawful conduct. As a result of Defendants' violation of W.S.A. §§ 133.01, *et seq.,* Plaintiffs,
on behalf of themselves and the Class members, seek treble damages and the costs of suit,
including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to
W.S.A. § 133.18(1)(a).

 105. Defendants benefited from their unlawful acts through the overpayment for LCD
and products containing LCD by Plaintiffs and Class members. It would be inequitable and
unconscionable for Defendants to be permitted to retain the benefits of these overpayments,
which were conferred by Plaintiffs and Class members and retained by Defendants.

 106. Plaintiffs and the Class members are entitled to have returned to each of them the
amount of such overpayments as damages or restitution.

## COUNT II
### (Violation of Wisconsin Fraudulent Representations Statute § 100.18)

 107. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if
fully set forth herein.

 108. Defendants communicated to their United States entities false reasons to explain
price increases, such as seasonal ebb and flow and a highly competitive market, and instructed

28

them to use these false reasons with United States customers. In fact, Defendants' prices for LCD were artificially inflated and maintained by virtue of Defendant's illegal price-fixing conspiracy.

109. Plaintiffs and the other members of the Class were paying higher prices for LCD than they would have paid in a competitive market.

110. Defendants benefited from their unlawful acts through the overpayment for LCD and products containing LCD by Plaintiffs and members of the Class. It would be inequitable and unconscionable for Defendants to be permitted to retain the benefits of these overpayments, which were conferred by Plaintiffs and members of the Class and retained by Defendants

111. As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiffs and the class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiffs and members of the Class.

112. Plaintiffs seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class members may seek restitution.

## COUNT III
### (Injunctive Relief for Violation of Clayton Act, 15 U.S.C. § 26)

113. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as if fully set forth herein.

114. Beginning by at least January 1, 2002 and continuing until at least December 31, 2005, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for LCD in Wisconsin and

throughout the United States.

115. Defendants' conduct in restraint of trade had the intent, and effect, of maintaining artificially high, and anticompetitive prices of LCD and/or products containing LCD.

116. Defendants and Co-Conspirators did those things they colluded and conspired to do, including, but not limited to, the allegations set forth herein.

117. Defendants' illegal combination and conspiracy as alleged herein had the effect of (i) restraining, suppressing and/or eliminating competition; (ii) artificially fixing, raising, maintaining, and/or stabilizing prices at high, supra-competitive levels; and (iii) depriving consumers of free and fair competition on the merits.

118. Defendant's illegal actions constitute violations Section 1 of the Sherman Act, 15 U.S.C. § 1.

119. It is in the best interest of the public to enjoin, pursuant to the Clayton Act, 15 U.S.C. § 26, Defendants and their officers, agents, employees, or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of LCD.

120. Plaintiffs and the Class have and will continue to be injured by Defendants' conduct in violation of the antitrust laws of the United States and Wisconsin statute W.S.A. §§ 133.01, *et seq*. in the absence of injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, Jai and Amy Paguirigan, pray for judgment against all Defendants, jointly and severally, and respectfully requests that the Court:

1. Certify this action to proceed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and direct that reasonable notice be given to Class members;

2. That the unlawful conduct, contract, conspiracy or combination alleged herein be

30

adjudged and decreed:

> a. An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of Wisconsin's antitrust laws as set forth in Count I herein;
>
> b. Acts of fraudulent representations in violation of Wisconsin's Fraudulent Representation law as set forth in Count II herein;
>
> c. Acts of unjust enrichment; and
>
> d. An unlawful combination, trust, agreement, understanding, and/or concert of action for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1

3.    Award Plaintiffs and the Class members treble damages and costs of suit, including reasonable attorneys' fees, filing fees and reasonable costs of the action pursuant to Wisconsin statute W.S.A. § 133.18(1)(a) and W.S.A. § 100.18;

4.    Award Plaintiffs and the Class members restitution from these Defendants for acts, as alleged herein, that violate Wisconsin's antitrust and common laws;

5.    Award Plaintiffs and the Class members restitution and disgorgement of profits obtained by Defendants as a result of their violation of common law principles prohibiting their acts of unfair competition and acts of unjust enrichment;

6.    Award Plaintiffs and the Class members a permanent injunction under Section 16 of the Clayton Act, 15 U.S.C. § 26,  for violations of the Sherman Act, 15 U.S.C. § 1, enjoining Defendants, and their officers, agents, employees, or representatives from engaging in this unlawful contract, combination, and conspiracy in restraint of trade or commerce;

7.    Award Plaintiffs and the Class members pre-judgment and post-judgment interest on the above sums at the highest rate allowed by law; and

8.    Grant such other, further or different relief as the Court deems meet and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims for which he is entitled to a jury trial.

Respectfully filed this ꒐ of ꒐, 2007.

SUSAN LaCAVA, SC

Susan LaCava
23 N. Pinckney St., Ste 300
Madison, WI 53703
(608)258-1335
sl@susanlacava.com

Attorneys who will seek to appear after filing
of complaint upon approval of *Pro Hac Vice* Motions:

David Boies, III, Esq.
Timothy D. Battin, Esq.
Ian Otto, Esq.
Nathan Cihlar, Esq.
STRAUS & BOIES, LLP
4041 University Drive, Fifth Floor
Fairfax, Virginia 22030
(703) 764-8700
(703) 764-8704 (facsimile)